United States District Court
Eastern District of New York

----------------------------------X

United States of America,

    - against -                  **Memorandum and Order**

Olabanji Otufale and Marc Lazarre,    No. 24-cr-170 (KAM)

             Defendants.

----------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

On April 26, 2024, a grand jury in the Eastern District of New York returned a two-count indictment against Olabanji Otufale and Marc Lazarre, charging (1) conspiracy to commit wire fraud and (2) aggravated identity theft. (ECF No. 1, Indictment.) Presently before the Court are the Government's pre-trial motions in limine. (ECF No. 39, Mem. Law Supp. Gov't's Mots. Lim. ("Mem."); ECF No. 50, July 10, 2024, Ltr. from S. Winik ("*Giglio* Ltr.").) Otufale and Lazarre have not filed pre-trial motions but oppose several of the Government's motions. (ECF No. 52, July 10, 2024, Ltr. from J. Branden & E. Macedonio ("Opp'n").) For the reasons stated below, the Court resolves the Government's motions as follows:

- ▪ The Government's motion to preclude cross-examination or argument regarding the legality of searches of Lazarre or legality of the seizures of evidence resulting from those searches, (Mem. 1-2), is granted, (*infra* I).

- The Government's motion to introduce statements from Otufale's post-arrest interview, the defendants' WhatsApp exchanges with each other, and information from Lazarre's phone, (Mem. 3-5), is granted in part, (*infra* II).  Specifically, the Government may:

  o   Introduce Otufale's statements from his post-arrest interview, (GX1300-14), against Otufale under Federal Rule of Evidence 801(d)(2)(A);

  o   Introduce each statement from the defendants' WhatsApp exchanges with each other, (GX300-16), against the defendant who made the statement under Rule 801(d)(2)(A); and

  o   Introduce each statement from the defendants' WhatsApp exchanges with each other, (GX300-16), against the co-defendant who did not make the statement under Rule 801(d)(2)(E), conditional on the Government later proving by a preponderance of the evidence that (1) a conspiracy existed, (2) the defendants were members of the conspiracy, and (3) the statements sought to be introduced were made during and in furtherance of the conspiracy.

  o   The Government's motion to introduce the documents extracted from Lazarre's phone, (GX400-08), is granted with respect to GX404 and denied without prejudice as to GX400-403 and GX405-08.

- The Government's motion to preclude the defendants from introducing their own statements from their WhatsApp exchanges with each other, Otufale's post-arrest interview, or Lazarre's phone, (Mem. 5-6), is granted, (*infra* III), insofar as the Government seeks to preclude the defendants from offering their own statements to prove the truth of the matter asserted.

- The Government's motion to introduce evidence regarding the defendants' discussions about illegally stealing, falsifying, or purchasing birth certificate information, (Mem. 7-8), is granted, (*infra* IV).

- The Government's motion to preclude introduction of evidence or argument regarding Otufale's failure to profit from the alleged scheme, (Mem. 9), is granted, (*infra* V).

2

- The Government's motion to impeach Lazarre (should he
  choose to testify) regarding the four convictions set
  forth in its memorandum, (Mem. 9–11), is granted,
  (*infra* VI).

- The Government's motion to preclude the use of law
  enforcement interview summaries to impeach the subject
  witnesses, (Mem. 11–13), is granted, (*infra* VII).

- The Government's motion to preclude introduction of
  evidence or argument regarding possible punishment or
  collateral consequences of conviction, (Mem. 14–15),
  is granted, (*infra* VIII).

- The Government's motion to authenticate business
  records and electronically generated records using
  records custodians' certifications and without calling
  the custodians to testify, (Mem. 15–17), is granted,
  (*infra* IX).

- The Government's motion to introduce evidence
  regarding the lawful seizure of Lazarre's iPhone 6S,
  (Mem. 17–18), is granted, (*infra* X).

- The Government's motion to preclude cross-examination
  of two of its anticipated witnesses regarding their
  prior criminal convictions, (*Giglio* Ltr.), is granted,
  (*infra* XI).

**Background**

On March 27, 2020, Congress passed the Coronavirus Aid,
Relief, and Economic Security ("CARES") Act, which established
federally funded unemployment insurance programs administered by
the states.  (Indictment ¶ 1.)  The Indictment alleges that in
October 2020, Otufale, a fraud investigator at the New York City
Department of Homeless Services and a Brooklyn resident, used
his position to access the personally identifiable information
("PII") of New York City residents.  (*Id.* ¶¶ 2–3.)  Otufale then
allegedly transferred the PII of over ten people, without their

knowledge or permission, to Lazarre, a New Jersey resident, in exchange for payment. (*Id.* ¶ 3.) The Indictment alleges that Otufale and Lazarre understood that Lazarre would use the PII to submit fraudulent unemployment insurance claims to the New York State Department of Labor. (*Id.*)

The Indictment describes one specific example of the alleged fraud. It alleges that on October 6, 2020, Otufale sent Lazarre a screenshot of "Person-1's" New York state identification card containing Person-1's name, date of birth, and address as well as a photograph of a computer screen showing Person-1's age, gender, and social security number. (*Id.*) The same day, Lazarre allegedly used Person-1's PII to submit a fraudulent unemployment insurance claim in Person-1's name to the New York State Department of Labor. (*Id.*) The New York State Department of Labor later allegedly mailed a debit card in Person-1's name to an address in Brooklyn, New York, and Lazarre allegedly sent a photograph of the envelope and card to Otufale on October 17, 2020. (*Id.*)

On April 26, 2024, a grand jury in the Eastern District of New York indicted Otufale and Lazarre for conspiracy to commit wire fraud and aggravated identity theft. (*Id.* ¶¶ 5-8); *see* 18 U.S.C. §§ 1349, 1343, 1028A(a)(1). Otufale was arraigned on May 1, 2024, pleaded not guilty to both counts, and was released on bond. (ECF No. 6, Minute Entry for Arraignment Proceeding.)

Lazarre was arraigned on May 20, 2024, pleaded not guilty to both counts, and did not present a bail application. (ECF No. 24, Crim. Cause for Arraignment & Status Conf.) The Government produced most discovery on May 17, 2024, and made several supplemental productions since then. (*See* ECF No. 33, July 1, 2024, Ltr. from E. Macedonio; ECF No. 34, July 1, 2024, Ltr. from K. Onyshko; ECF No. 35, July 1, 2024, Ltr. from K. Onyshko; ECF No. 36, July 3, 2024, Ltr. from K. Onyshko; ECF No. 38, July 5, 2024, Ltr. from K. Onyshko; ECF No. 53, July 10, 2024, Ltr. from K. Onyshko; ECF No. 57, July 11, 2024, Ltr. from K. Onyshko.)

At a June 27, 2024, status conference, after Lazarre refused to consent to exclude any further periods of delay under the Speedy Trial Act, 18 U.S.C. § 3161, the Court ordered the parties to appear on July 15, 2024, for jury selection and the beginning of trial. (Minute Entry, June 27, 2024.) The Court ordered the parties to file all pre-trial motions by July 5, 2024, with responses due on July 10, 2024, and replies due on July 11, 2024. (ECF No. 30, Crim. Pre-Tr. Scheduling Order.) Only the Government filed pre-trial motions, which now are fully submitted. (ECF Nos. 39, 50, 52, 54, 58.)

## Legal Standard

A motion in limine is a request for the court to resolve a forecasted evidentiary dispute before trial. *United States v.*

*James*, 607 F. Supp. 3d 246, 251 (E.D.N.Y. 2022).  The court may exclude the disputed evidence only if the evidence is clearly inadmissible on all potential grounds.  *Id.*  If the court needs additional factual context to resolve the motion, the court may reserve its decision until an appropriate time during trial. *Id.* at 252.  A ruling on a motion in limine is preliminary and subject to change as the case unfolds.  *Id.*

Evidence is generally admissible if it is "relevant." Fed. R. Evid. 402.  Evidence is relevant if it has any tendency to make a consequential fact more or less probable than it otherwise would be.  Fed. R. Evid. 401.  Irrelevant evidence is not admissible.  Fed. R. Evid. 402.  The court may exclude relevant evidence if its probative value is "substantially outweighed" by a danger of unfair prejudice, confusing the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.

## Discussion

### I. Cross-Examination Regarding Searches and Seizures

The Government moves to preclude Otufale and Lazarre from offering testimony that the search of Lazarre's person, residence, or car were unlawful.  (Mem. 1–2.)  Otufale and Lazarre state that they do not intend to introduce testimony that the searches pertaining to Lazarre were unlawful.  (Opp'n 1.)

The legality of the searches that occurred in this case is collateral to whether Otufale and Lazarre actually committed the offenses charged in the Indictment.  Any evidence regarding the legality of the searches thus must be excluded as irrelevant. *See* Fed. R. Evid. 402.  To the extent such evidence might have marginal relevance, it still must be excluded because its probative value would be substantially outweighed by the danger of distracting the jury by effectively holding a mini trial on a collateral issue.  *See* Fed. R. Evid. 403.  Moreover, Lazarre does not dispute the legality of the searches of his person, residence, or vehicle.  (*See* Opp'n 1.)

Accordingly, the Court grants the Government's motion to preclude Otufale and Lazarre from offering testimony that the search of Lazarre's person, residence, or car were unlawful. Otufale and Lazarre are further precluded from arguing to the jury that those searches were unlawful.

## II.  Government's Introduction of Statements from Otufale's Post-Arrest Interview, WhatsApp Exchanges Between Otufale and Lazarre, and Lazarre's Phone

The Government moves to introduce excerpts of (1) Otufale's post-arrest statement, (2) WhatsApp exchanges between the defendants, and (3) data extracted from Lazarre's phone.  (Mem. 3–5; *see* ECF No. 42, July 8, 2024, Ltr. from S. Winik ("Ltr.") (clarifying the precise exhibits sought to be introduced).) Hearsay, a statement not made by the declarant while testifying

at the current trial offered to prove the truth of the matter
asserted in the statement, is generally inadmissible.
Fed. R. Evid. 801(c), 802.  A party's own statement, however, is
not hearsay when offered by the party's opponent against the
party.  Fed. R. Evid. 801(d)(2)(A).  Additionally, a party's co-
conspirator's statement made during and in furtherance of the
conspiracy is not hearsay when offered by the party's opponent
against the party.  Fed. R. Evid. 801(d)(2)(E).

Each statement from Otufale's post-arrest interview and the
defendants' WhatsApp exchanges with each other is admissible
against the defendant who made the statement.  To the extent the
Government offers statements from Otufale's post-arrest
interview against Otufale, those statements are party admissions
and thus not hearsay.  Fed. R. Evid. 801(d)(2)(A).  Similarly,
each defendant's statement that appears in the WhatsApp
exchanges is admissible against the defendant who made the
statement.  (*See* GX300-16.)  Otufale and Lazarre do not dispute
this part of the Government's motion.  (Opp'n 1.)

Each statement from the WhatsApp exchanges also is
conditionally admissible against the co-conspirator defendant
who did not make the statement.  A co-conspirator's statement
that otherwise would be hearsay is admissible under
Rule 801(d)(2)(E) if it is proven by a preponderance of the
evidence that (1) a conspiracy existed, (2) the defendant and

declarant were members of the conspiracy, and (3) the statements at issue were made during and in furtherance of the conspiracy. *United States v. Wedd*, 993 F.3d 104, 117 (2d Cir. 2021).  The court may defer ruling on whether these elements are met until the close of evidence while conditionally admitting the statements subject to a later ruling by the close of evidence that the Government established the elements by a preponderance of the evidence.  *United States v. Watts*, 934 F. Supp. 2d 451, 473-74 (E.D.N.Y. 2013); *see United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969) (establishing this procedure in the Second Circuit).

The defendants' statements in the WhatsApp exchanges are contemporaneous with the alleged conspiracy, are interspersed with pictures of PII, and discuss the alleged scheme.  (*See, e.g.*, GX302-007 ("Told u send a few at once guy"); GX302-014 ("U want someone older"); GX303 ("Yo that [name] u have me with DL is looking good should pay out soon.  He gonna get ref pandemic 182 minimum."); GX309-002 ("Shit should free up this week card in its way should b here soon also").)  In conjunction with the admissions Otufale made to law enforcement during his post-arrest interview, (*see, e.g.*, GX1306 (Otufale admitting he and Lazarre had an agreement); GX1307 (admitting he took screenshots and sent them to Lazarre); GX1308 (admitting he sent Lazarre PII through WhatsApp)), the statements in the WhatsApp exchanges

appear to satisfy the prerequisites for admission under Rule 801(d)(2)(E), *see Bourjaily v. United States*, 483 U.S. 171, 180–81 (1987) (explaining that "the existence of a conspiracy and [the defendant's] participation in it" may be established where "[e]ach one of [the declarant's] statements may itself be unreliable, but taken as a whole, the entire conversation . . . [is] corroborated by independent evidence").  Still, because the Government made only a general motion and did not provide an explanation putting specific statements in context, (*see* Mem. 3–5; Ltr. 1–2 (citing GX300–16)), the Court declines to unconditionally admit the WhatsApp exchanges before trial.  The Court will conditionally admit these statements subject to later proof that the prerequisites for admissibility under Rule 801(d)(2)(E) are met.

Otufale and Lazarre do not object to the conditional admission procedure, but Lazarre opposes admitting the statements in one of the Government's exhibits discussing his BMW.  (Opp'n 1; *see* GX311 ("U got A bmw now" and "Yeah . . . x6").)  As the Government explains in its reply, (ECF No. 58, July 11, 2024, Ltr. from S. Winik), the defendants' WhatsApp exchanges contain a photograph of Lazarre holding an envelope from the New York State Department of Labor inside his car with the BMW emblem visible on the car's steering wheel, (*see* GX311-1; Indictment ¶ 4 (discussing this photograph)).  Thus,

evidence that Lazarre owned the BMW is relevant to establishing that Lazarre possessed the debit card.  The risk of undue prejudice resulting from the jury knowing that Lazarre owned a BMW does not substantially outweigh the probative value of the BMW's role in connecting Lazarre to the envelope.

Of the data extracted from Lazarre's phone, (GX400-08), only GX404 is admissible under Rule 801(d)(2)(E).  Most of these documents do not contain "statements" or they contain statements by third parties.  (GX400 (image); GX401 (automated message from car rental company); GX402 (image); GX403 (WhatsApp message stating only "Marc lazarre NJ"); GX405-06 (images); GX408 (image)); *see* Fed. R. Evid. 801(a) (defining "statement" as a "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion").  GX404 contains a statement about Lazarre's BMW, which is relevant for the reasons discussed above.  (*See* GX404 ("Hey bro this is Marc Lazarre the white X6 owner").)  GX407 is irrelevant and was sent two years after the conduct alleged in the Indictment.  (*See* GX407 (July 12, 2022, message stating "Hey it's Marc Lazarre and I'm still in pain").)

Accordingly, the Court rules on Section II of the Government's motion as follows:  (1) Otufale's statements from GX1300-14 are admissible against him; (2) each of the defendants' statements from GX300-16 is admissible against the

defendant who made the statement; (3) each of the defendants'
statements from GX300-16 is admissible against the co-
conspirator defendant who did not make the statement,
conditional on the Government proving by a preponderance of the
evidence that (a) a conspiracy existed, (b) Otufale and Lazarre
were members of the conspiracy, and (c) the statements sought to
be admitted were made during and in furtherance of the
conspiracy; and (4) the Government's motion to admit GX400-08 is
granted as to GX404 but denied without prejudice as to GX400-403
and GX405-08.

### III. Defendants' Introduction of Statements from Otufale's Post-Arrest Interview, WhatsApp Exchanges Between Otufale and Lazarre, and Lazarre's Phone

The Government also moves to preclude Otufale and Lazarre
from introducing their own statements to prove the truth of any
matters asserted in those statements.  (Mem. 5-6.)  Otufale and
Lazarre state that they will not seek to introduce these
statements.  (Opp'n 1.)

Party admissions and co-conspirator statements are
generally hearsay unless "offered *against* an opposing party."
Fed. R. Evid. 801(d)(2) (emphasis added).  When statements by a
party or co-conspirator are offered *by* the party to prove the
truth of the matter asserted, such statements are hearsay and
generally inadmissible.  *United States v. Kadir*, 718 F.3d 115,
124 (2d Cir. 2013).  A party's own prior out-of-court statement

12

is not hearsay, however, if the party introduces it for another purpose, such as to prove that the statement was made. *United States v. Coplan*, 703 F.3d 46, 84 (2d Cir. 2012). Such statements also are not hearsay if offered for rehabilitation purposes or to identify a person as someone the party perceived earlier. Fed. R. Evid. 801(d)(1). Finally, a party's own prior statements may fall within an exception to the general rule against hearsay. *See* Fed. R. Evid. 803, 807.

Accordingly, the Government's motion is granted insofar as it seeks to preclude Otufale and Lazarre from introducing their own statements or each other's statements from GX1300-14, GX300-16, or GX400-08 for the truth of the matter asserted. The defendants may introduce those statements if validly offered for one of the permissible purposes described above.

## IV. Evidence of Birth Certificate Forgeries

The Government moves to introduce evidence of uncharged misconduct, specifically the defendants' conversations regarding purchasing or falsifying birth certificates or other identity documents. (Mem. 7–8; *see* Ltr. 2.) Otufale and Lazarre oppose this motion. (Opp'n 1–2.)

Evidence of a person's prior act is inadmissible to prove the person's character to show that the person acted in accordance with that character on a particular occasion. Fed. R. Evid. 404(b)(1). Such evidence may be admissible,

13

however, when offered for any other purpose.  Fed. R. Evid. 404(b)(2).  When evidence of a prior act implicates both character and a permissible purpose, the court must balance the evidence's probative value with respect to the proper purpose against the danger of the jury improperly relying on it as proof of character.  *See Huddleston v. United States*, 485 U.S. 681, 691–92 (1988); *United States v. Blake*, 195 F. Supp. 3d 605, 612 (S.D.N.Y. 2016).

The messages at issue are admissible because they are probative of the defendants' intent and knowledge regarding the charged conspiracy, which are permissible purposes for offering evidence under Rule 404(b).  The messages were sent in October 2020, contemporaneous with the charged conspiracy, and interspersed with messages concerning the charged conspiracy. (*See, e.g.*, GX304-002 ("Docs ain't cheap either I buy about 2 3 a day sometimes"); GX312 ("U got connect on birth certificate" and "How much for birth certificate"); GX313-002 ("I sent docs for your shit few weeks ago they still ain't release might take up to 6 weeks if they want"); GX314-008 ("[name] is in [place] but if u can't do it I can get a different [address]".)  The messages show that Lazarre used the information Otufale provided to place applications, that the applications cost money to place, and that there was some overlap in victims between the charged unemployment insurance scheme and the uncharged birth

14

certificate scheme.  Thus, these messages are admissible for the proper purposes of refuting a defense that Lazarre did not know the information Otufale provided him was stolen or that either defendant did not understand the whole scope of the alleged agreement between them.

Accordingly, the Government's motion to admit evidence of uncharged conduct regarding the defendants' alleged forgery, purchase, or theft of birth certificates is granted.

**V.   Failure to Profit**

The Government moves to preclude Otufale and Lazarre from offering any evidence or making any argument that the alleged conspiracy did not succeed and that Otufale did not profit from it.  (Mem. 9.)  It elaborates that "the evidence at trial will show that one submission for unemployment insurance benefits was successful and the others were not."  (Mem. 9.)  Otufale states that he does not intend to introduce evidence regarding his lack of profit from the charged offenses.  (Opp'n 2.)  The success or failure of a conspiracy is irrelevant to whether a defendant may be convicted for his or her role in a conspiracy.  *United States v. Miranda-Ortiz*, 926 F.2d 172, 175 (2d Cir. 1991); *United States v. Ulbricht*, 31 F. Supp. 3d 540, 564 (S.D.N.Y. 2014).

Accordingly, the Court grants the Government's motion to preclude Otufale and Lazarre from offering evidence that the alleged conspiracy was unsuccessful as to victims other than

15

Person-1 or that Otufale did not profit from the alleged scheme. Otufale and Lazarre are further precluded from arguing to the jury about the extent to which the scheme might have been unsuccessful.

## VI.  Lazarre's Prior Convictions

The Government moves to cross-examine Lazarre regarding five prior felony convictions should he choose to testify. (Mem. 9–11.)  Lazarre opposes the motion.  (Opp'n 2–3.)

Evidence of a witness's prior criminal conviction is admissible for impeachment purposes.  Fed. R. Evid. 609(a). Prior conviction evidence must be admitted against a criminal defendant if the offense was punishable by death or imprisonment for more than one year and its probative value outweighs its prejudicial effect to the defendant.  Fed. R. Evid. 609(a)(1)(B).  In conducting this balancing, courts consider (1) the conviction's impeachment value, (2) the amount of time that passed between the prior conviction and the trial date, (3) the similarity of the past crime to the charged crime, (4) the importance of the defendant's testimony, and (5) the importance of the witness's credibility to the trial.  *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977); *United States v. White*, 312 F. Supp. 3d 355, 359 (E.D.N.Y. 2018).  Evidence of a witness's prior criminal conviction also must be admitted "if the court can readily determine that establishing the elements

16

of the crime required proving – or the witness's admitting – a dishonest act or false statement." Fed. R. Evid. 609(a)(2). If Rule 609(a)(2) applies, admission of the conviction is mandatory and not subject to any balancing. *Diallo v. Ruan Transp. Corp.*, No. 18-cv-1834 (KNF), 2021 WL 3222733, at *3 (S.D.N.Y. July 29, 2021).

Lazarre's January 12, 2015, conviction for attempted possession of a forged instrument in violation of New York law is admissible. A person can only be convicted of that crime if he or she possesses the forged instrument "with intent to defraud, deceive[,] or injure another." *See* N.Y. Penal Law § 170.25. Thus, the Court can readily determine that establishing the elements of the crime requires proof or admission of a dishonest act or false statement. *See* Fed. R. Evid. 609(a)(2); *Benson v. Gardner*, No. 19-cv-1004 (TWD), 2022 WL 523729, at *3 (N.D.N.Y. Feb. 22, 2022) (holding conviction under N.Y. Penal Law § 170.25 admissible under Rule 609(a)(2)); *Gonzalez v. Morris*, No. 14-cv-1438 (BKS) 2018 WL 4471625, at *1 (N.D.N.Y. Sept. 18, 2018) (same).

Lazarre's September 13, 2018, conviction for attempted identity theft in violation of Virginia law is admissible. Though the statute of conviction has multiple subsections and it is unclear under which section Lazarre was convicted, the statute imposes a *mens rea* standard of "intent to defraud" for a

17

violation of any subsection.  *See* Va. Code Ann. § 18.2-186.3(A).
Thus, the Court can readily determine that establishing the
elements of the elements of the crime requires proof or
admission of a dishonest act or false statement.  *See*
Fed. R. Evid. 902(a)(2); *United States v. Carey*, No. 08-cr-157
(JAW), 2009 WL 485112, at *1 (D. Me. Feb. 26,  2009) (holding
conviction under Va. Code Ann. § 18.2-186.3 admissible under
Rule 609(a)(2)).

Lazarre's September 28, 2018, conviction for identity theft
in violation of Pennsylvania law is admissible.  *See*
18 Pa. Cons. Stat. § 4120(a).  The Court was unable to find any
decision addressing whether a conviction under this Pennsylvania
state statute requires proof or admission of a dishonest act or
false statement such that evidence of the conviction would be
mandatorily admissible under Rule 609(a)(2).  Other courts
addressing identity theft charges under other statutes, such as
the federal identity fraud statute, have concluded that identity
theft convictions were mandatorily admissible under
Rule 609(a)(2) because they necessarily involved dishonesty or
false statements.  *See, e.g.*, *United States v. Ilori*,
No. 21-cr-746 (MKV), 2022 WL 2452258, at *7 (S.D.N.Y. July 5,
2022).  By its plain text, the Pennsylvania identity theft
statute appears to criminalize approximately the same conduct
that the federal identity theft statute does.  *Compare*

18

18 Pa. Cons. Stat. § 4120(a) (imposing criminal liability on any person who "possesses or uses, through any means, identifying information of another person without the consent of that other person to further any unlawful purpose") *with* 18 U.S.C. § 1028A(a)(1) (imposing criminal liability on "[w]hoever, during and in relation to any felony conviction enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person"). Thus, Lazarre's Pennsylvania identity theft conviction likely is mandatorily admissible under Rule 609(a)(2).

Regardless of Rule 609(a)(2), however, the conviction is admissible under Rule 609(a)(1)(B) because the crime was punishable by a term of imprisonment greater than one year, (*see* ECF No. 25, Pretr. Servs. Rep. (Lazarre), p. 11 (noting Lazarre was sentenced to fifteen months of incarceration for this crime), and the probative value of the conviction outweighs any prejudicial effect to Lazarre.  First, the offense involved theft and deception in using another person's identifying information without consent, which favors admissibility because it "reflect[s] on a person's integrity" and thus "bear[s] on honesty."  *See Monroe v. Town of Haverstraw*, 639 F. Supp. 3d 459, 463 (S.D.N.Y. 2022).  Additionally, the conviction is only six years old, which favors admissibility because that time is not especially remote to the date on which Lazarre would

testify, should he elect to do so.  *See Jean-Laurent v.
Hennessy*, 840 F. Supp. 2d 529, 544 (E.D.N.Y. 2011) (finding
"remoteness" factor favored admitting six-year-old conviction).
Lazarre correctly notes that the offense is similar to the
identity theft offense charged in this case, which weighs
against admissibility because of the risk the jury will
interpret evidence of the 2018 Pennsylvania conviction as
propensity evidence rather than as impeachment evidence.  (*See*
Opp'n 3); *United States v. Vasquez*, 840 F. Supp. 2d 564, 571–72
(E.D.N.Y. 2011) (finding similarity between past and present
drug crimes weighed against admissibility).

On the other hand, if Lazarre testifies, his testimony as
one of the defendants charged in this case would be critical to
the trial, which favors admissibility.  Moreover, the importance
of Lazarre's credibility to his testimony favors admissibility
because Lazarre's defense to the Government's documentary
evidence presumably would be his own word that he lacked the
requisite knowledge to commit the instant offenses.  *See White*,
312 F. Supp. 3d at 361 (noting that if defendant were to
testify, "his testimony would likely contradict the testimony of
the Government's witnesses" and thus "evidence of [his] prior
convictions would be highly probative for the jury to determine
his veracity and credibility").  Thus, given that the conviction
is highly probative of Lazarre's credibility, and given the

20

centrality that Lazarre's testimony and credibility would have in the trial were he to testify, the Court will permit the Government to impeach Lazarre regarding the 2018 Pennsylvania conviction for identity theft. *See United States v. White*, No. 08-cr-682 (NGG), 2009 WL 4730234, at *4 (E.D.N.Y. Dec. 4, 2009) (finding probative value of conviction outweighed risk of undue prejudice notwithstanding similarity between past offense and offense charged).

Finally, Lazarre's May 18, 2022, conviction for knowingly exhibiting a false government document in violation of New Jersey law is admissible because the offense is punishable by a term of imprisonment greater than one year and the conviction's probative value outweighs its risk of prejudice to Lazarre. *See* Fed. R. Evid. 609(a)(1)(B). Knowingly exhibiting a false government document is a "crime of the third degree" under New Jersey law, N.J. Stat. Ann. § 2C:21-2.1(c), which is punishable by a prison sentence "between three years and five years," N.J. Stat. Ann. § 2C:43-6(a)(3). Like identity theft, exhibiting a false document implicates honesty and a conviction for that offense thus is probative of credibility. Additionally, Lazarre's New Jersey conviction is even less remote in time than the Pennsylvania conviction described above. Moreover, as described above, the importance Lazarre's testimony and credibility would have if he were to testify would favor

21

admitting evidence of this conviction despite its similarity to the instant identity theft offense.

The Court has considered the aggregate prejudicial effect of allowing the Government to cross-examine Lazarre regarding four convictions.  Once one prior conviction is introduced, the "incremental value of additional convictions may be diminished." *White*, 2009 WL 4730234, at *5.  On the other hand, because "felony convictions are probative of dishonesty, additional convictions suggest greater dishonesty." *Id.*  Here, Lazarre's prior convictions are highly probative of whether Lazarre would be truthful if called to testify. *See id.* (permitting cross-examination on only one of two prior convictions government sought to introduce due to risk jury would consider them evidence of defendant's "propensity to engage in a crime that may involve a firearm").  To accurately assess Lazarre's credibility on the stand, the jury would have to know about his past convictions involving dishonesty, deception, and disrespect for the law over the last decade.  Any aggregate prejudicial effect that results can be mitigated by instructing the jury to consider Lazarre's convictions solely to assist the jury in assessing Lazarre's credibility, not his propensity to commit fraud.

Accordingly, the Court grants the Government's motion to cross-examine Lazarre regarding the four convictions mentioned

above should Lazarre choose to testify.  Evidence of each conviction will be limited to the generic nature of the offense, the date of the offense, and the sentence.  The Court will issue appropriate instructions to ensure that the jury considers the evidence of Lazarre's convictions only for its proper purpose.

## VII.  Use of Law Enforcement Summaries of Witness Interviews to Impeach the Subject Witnesses

The Government has indicated that it will produce summaries of witness interviews prepared by law enforcement.  (Mem. 11-13.)  The Government moves to preclude Otufale and Lazarre from introducing the contents of these summaries to impeach the witnesses interviewed, publishing the summaries to the jury, or suggesting that the summaries are the statements of the witnesses interviewed.  (*Id.*)  Otufale and Lazarre state that they do not intend to suggest that any statements in the summaries are statements of the witnesses interviewed.  (Opp'n 4.)

A witness may be impeached by evidence of the witness's *own* prior statements.  *See* Fed. R. Evid. 613.  "[N]otes of a *third party* regarding what a witness said," however, "are not admissible as prior statements of that witness in the absence of the witness's endorsement of those notes as his [or her] own statement."  *SEC v. Treadway*, 438 F. Supp. 2d 218, 223 (S.D.N.Y. 2006) (emphasis added); *see Berkovich v. Hicks*, 922 F.2d 1018,

23

1025 (2d Cir. 1991) (affirming exclusion of FBI report containing summary of interview with witness for purpose of impeaching witness because "[t]he summary was not the recollection of [the witness], but was the recollection of an FBI agent").  The reports at issue here summarize interviews with witnesses, but they are the agents' statements and not the witnesses' own statements.  (*See* GX3500.)

Accordingly, the Court grants the Government's motion to preclude Otufale and Lazarre from using the content of these reports to impeach the subject witnesses; however, Otufale and Lazarre may use these reports to impeach the agents who wrote the reports should those agents testify.  Otufale and Lazarre may not argue to the jury that the agents' reports reflect witness statements rather than the agents' own summaries of the interviews.

## VIII. Evidence Regarding Consequences of Conviction

The Government moves to preclude Otufale and Lazarre from discussing the potential consequences of conviction in the instant case.  (Mem. 14–15.)  Otufale and Lazarre state that they do not intend to discuss these topics.  (Opp'n 4.)

"[J]uries are not to consider the consequences of their verdicts."  *Shannon v. United States*, 512 U.S. 573, 579 (1994).  Thus, "it would be improper for the jury to hear about any potential . . . consequences of a guilty verdict" because such

24

evidence "do[es] not bear on the charged crimes." *United States v. Adelekan*, 567 F. Supp. 3d 459, 471 (S.D.N.Y. 2021) (granting motion to preclude introduction of "evidence concerning the punishment or . . . consequences of conviction").

Accordingly, the Court grants the Government's motion to preclude Otufale and Lazarre from introducing any evidence or making any argument to the jury regarding the potential consequences of conviction in the instant case.

## IX. Authentication of Business Records and Electronically Generated Records by Records Custodians' Certifications

The Government moves to authenticate business records and electronic records using records custodian certifications without calling the custodians to testify. (Mem. 14–16.) Otufale and Lazarre do not object to this motion. (Opp'n 4.)

A record meeting requirements A through C of the "business records" hearsay exception is considered self-authenticating and requires no extrinsic evidence of authenticity to be admitted if those requirements are shown by a certification from the record's custodian. Fed. R. Evid. 902(11); *see* Fed. R. Evid. 803(6)(A)–(C) (listing the requirements).* A "record generated

---

* A document qualifies for the business records hearsay exception if (A) the document "was made at or near the time by – or from information transmitted by – someone with knowledge," (B) the document "was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling," (C) "making the record was a regular practice of that activity," (D) these conditions are "shown by the testimony of the custodian or another qualified witness" or a certification complying with Rule 902(11) or (12) or with a statute permitting certification, and (E) "the opponent does not show that the source of information or the method or circumstances of preparation

25

by an electronic process or system that produces an accurate result," as shown by a records custodian's certification meeting the requirements of Rule 902(11), also is self-authenticating. Fed. R. Evid. 902(13).  The certification may constitutionally be admitted in a criminal trial absent live testimony from the custodian because such records are not "testimonial."  *See Melendez-Diaz v. Mass.*, 557 U.S. 305, 311 n.1 (2009); *United States v. Hunt*, 534 F. Supp. 3d 233, 256–57 (E.D.N.Y. 2021).

Accordingly, the Government may authenticate the business and electronic records set forth in Exhibit A to its motions, (*see* ECF No. 39-1), using records custodian certifications without calling the records custodians to testify.

## X.    Direct Examination Regarding Searches and Seizures

The parties have agreed to stipulate that Lazarre's iPhone 6S was lawfully seized pursuant to a search warrant. (Mem. 17–18.)  Otufale and Lazarre state that "[c]ertification of the lawful seizure of the . . . iPhone 6S was executed by his attorney," which suggests that the parties will eventually file the contemplated stipulation.  (Opp'n 4.)

Should the parties not so stipulate, however, the Government moves to introduce limited testimony that the phone was lawfully seized without disclosing the separate New Jersey

---

indicate a lack of trustworthiness."  Fed. R. Evid. 803(6).

investigation that led to its seizure unless Otufale or Lazarre open the door to such testimony.  (*Id.*)  The Government argues that this evidence is necessary to prove the "identity of the person who drafted the messages on the phone."  (*Id.* 17.)  The identities of the people who drafted messages that appear on the phone are relevant.  The separate New Jersey investigation is not.

Accordingly, the Court grants the Government's motion insofar as the Government seeks to introduce details of the seizure of Lazarre's iPhone 6S to prove who sent messages that appear on the phone.  The Government may not introduce evidence regarding the seizure for any other purpose unless Lazarre opens the door to such evidence by challenging his ownership of the phone or by challenging the Government's assertions as to who authored the messages.

## XI.  *Giglio* Material

Under *Giglio v. United States*, 405 U.S. 150 (1972), the Government has a duty to disclose information that could be used to impeach the Government's witnesses.  *United States v. Kenner*, 272 F. Supp. 3d 342, 421 (E.D.N.Y. 2017).  Here, the Government made *Giglio* disclosures with respect to two victims of the defendants' alleged scheme that the Government anticipates calling to testify.  (*See* ECF No. 50, July 10, 2024, Ltr. from S. Winik ("*Giglio* Ltr.").)  The Government moves to preclude the

27

defendants from cross-examining these two witnesses about this information.  (*Id.*)  The defendants state that they do not intend to cross-examine these witnesses regarding the information disclosed in the Government's *Giglio* disclosure. (ECF No. 54, July 11, 2024, Ltr. from E. Macedonio.)  The Court for now refers to these anticipated witnesses as "Witness A" and "Witness B."

As explained above, (*supra* VI), evidence of a witness's prior criminal conviction is admissible for impeachment purposes within certain limits.  Additionally, as relevant here, special limits apply if over ten years have passed since the later of the witness's conviction or release from confinement. Fed. R. Evid. 609(b).  Such a conviction is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1).

Witness A has several New York state court convictions.  He pleaded guilty to criminal possession of a controlled substance in the seventh degree ten times between 1986 and 2018.  (*Giglio* Ltr. 1.)  He also pleaded guilty to criminal facilitation in the fourth degree in 2018, petit larceny in 2013, attempted theft of services in 2010, criminal sale of a controlled substance in 1994, attempted possession of a controlled substance in 1988 and 1990, attempted robbery in the second degree in 1982, and

criminal trespass in the third degree in 1981.  (*Id.* 1–2.)

The Court will not permit cross-examination of Witness A regarding these convictions.  The drug, facilitation, larceny, theft of services, and trespass convictions were not punishable by a term of imprisonment exceeding one year because they were misdemeanors, *see* N.Y. Penal Law § 70.15, and it does not appear that establishing the elements of these crimes required proof or admission of a dishonest act or false statement, *see* Fed. R. Evid. 609(a).  Witness A's four felony convictions are all at least thirty years old, (*see Giglio* Ltr. 2), and three of them are for the sale or attempted possession of drugs, which rank "moderately low on the scale of veracity-related crimes," *see Vasquez*, 840 F. Supp. 2d at 569.  The fourth felony conviction, the 1982 attempted robbery conviction, occurred much too far in the past to be probative of Witness A's present-day credibility, much less to have probative value that "significantly outweighs its prejudicial effect," *see* Fed. R. Evid. 609(b)(1).

Witness B pleaded guilty to petit larceny in New York state court in 2004.  (*Giglio* Ltr. 2.)  In New York, petit larceny is a misdemeanor offense not punishable by a sentence of imprisonment exceeding one year, *see* N.Y. Penal Law § 70.15, nor does it appear that establishing the elements of this crime required proof or admission of a dishonest act or false

statement, *see Montanez v. City of Syracuse*, No. 16-cv-550 (BKS), 2019 WL 4257134, at *3 (N.D.N.Y. Sept. 9, 2019) ("[P]etit larceny does not require proof of a dishonest act or false statement."). Thus, evidence of Witness B's petit larceny conviction is not admissible for impeachment purposes. *See* Fed. R. Evid. 609(a).

Accordingly, the Government's motion to preclude cross-examination of Witness A and Witness B regarding their prior criminal convictions is granted.

**So ordered.**

Dated:     July 12, 2024
           Brooklyn, New York

_____
Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

30